John DOE, Plaintiff,

v.

Reverend Jesse S. LINAM; The Roman Catholic Diocese of Galveston–Houston; and Most Reverend Joseph A. Fiorenza, his predecessors and successors, as Bishop of the Roman Catholic Diocese of Galveston–Houston, Defendants.

No. Civ.A. G–02–464.

United States District Court, S.D. Texas, Galveston Division.

Aug. 21, 2002.

Felecia Yvonne Peavy, Attorney at Law, Houston, TX, for Plaintiff.

Stephen Robert Lewis, Jr., Lewis & Williams, Galveston, TX, Robert M Schick, Vinson & Elkins, Houston, TX, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

KENT, District Judge.

This lawsuit arises from the alleged sexual abuse of Plaintiff John Doe by a Roman Catholic Priest. Two virtually identical Motions to Dismiss are now before the Court: (1) a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) filed by Defendant the Reverend Jesse Linam ("Linam"); and (2) a Motion to Dismiss pursuant to Fed. R.Civ.P. 12(b)(6) filed by Defendants the Roman Catholic Diocese of Galveston–Houston ("Diocese") and the Most Reverend Joseph A. Fiorenza ("Bishop"). After carefully considering Defendants' Motions, Plaintiff's Response thereto and the applicable law, the Court concludes that Defendants' Motions to Dismiss must be **GRANTED.**

## I.

The facts alleged by Plaintiff can be summarized concisely. The Diocese ordained Linam as a Roman Catholic Priest in 1961. From February of 1975 until June of 1985, Linam served as the Pastor of St. Andrews Church in Channelview, Texas, a parish within the Diocese. Plaintiff's family belonged to the St. Andrews congregation during that time and collectively, the family contributed thousands of volunteer hours and tens of thousands of dollars to the Church. Plaintiff, then a young boy, attended weekly mass, served as an altar boy and participated in numerous other Church-sponsored activities. During these activities, Linam and others taught Plaintiff to believe and rely upon the moral and spiritual guidance of Church leaders. Consequently, Plaintiff developed great trust, confidence, reverence and respect for the Church and those individuals associated with its teachings. In fact, Plaintiff continues to practice his Catholicism today in California, the state where he now resides.

While employed by St. Andrews, Linam became a trusted friend and honored houseguest of Plaintiff's family. However, Linam violated this trust by sexually abusing Plaintiff during the latter half of 1973 and the first half of 1974. As a direct result of this abuse, Plaintiff subsequently suffered chronic and severe psychological injuries that caused him to embark upon a self-destructive course of conduct. The emotional, physical and sexual difficulties that resulted from the abuse still plague Plaintiff today. Tragically, neither the Diocese of the Bishop carried out an adequate investigation as to whether Linam was fit to work with children, especially young boys. Had such an investigation been conducted, Plaintiff would not have suffered the abuse or resulting trauma.

Plaintiff was only one of the numerous minor boys abused by Linam between 1961 and 1993 on premises owned by the Diocese. Although the Diocese and the Bishop were aware of Linam's dangerous sexual propensities as early as the 1970's, they concealed this knowledge from the public and continued to keep such information secret throughout the ensuing years. At no time did the Diocese or the Bishop report the allegations against Linam to the proper authorities. This failure to report was carried out pursuant to an agreement between the Defendants to conceal the sexual abuse of minors by Linam and other priests via false representations to the public, thereby reducing their risk of criminal and civil liability to the abuse victims. This course of conduct began prior to the abuse of Plaintiff and continued until very recently.

Based upon these allegations, Plaintiff filed this lawsuit on July, 1, 2002—twenty-eight years after the alleged abuse occurred. In his Original Complaint, Plaintiff asserts a variety of state law tort claims against all three Defendants: negligence, intentional infliction of emotional distress ("IIED"), conspiracy, breach of fiduciary duty and fraud. Plaintiff also asserts a personal injury claim against Linam and a vicarious liability claim, arising out of his underlying personal injury claim, against the Diocese and the Bishop. Defendants now seek a dismissal of all Plaintiff's claims on grounds that they are barred by the applicable statutes of limitation.

## I.

The Federal Rules of Civil Procedure authorize a court, upon suitable showing, to dismiss any action or any claim within an action for failure to state a claim upon which relief can be granted. *See* Fed. R.Civ.P. 12(b)(6). When considering a Motion to Dismiss, the Court accepts as true all well-pleaded allegations in the

complaint, and views them in a light most favorable to the Plaintiff. *See Malina v. Gonzales,* 994 F.2d 1121, 1125 (5th Cir. 1993). Unlike a Motion for Summary Judgment, a Motion to Dismiss should be granted only when it appears without a doubt that the Plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir.1994). A Rule 12(b)(6) motion to dismiss for failure to state a claim is the proper vehicle by which to assert a limitations defense where a plaintiff's complaint shows affirmatively that his claims are time-barred. *See Herron v. Herron,* 255 F.2d 589, 593 (5th Cir.1958); *United States v. Bantau,* 907 F.Supp. 988, 990 (N.D.Tex. 1995).

## II.

As grounds for their Motions to Dismiss, Defendants contend that the allegations made by Plaintiff in his Complaint establish that (1) Plaintiff's claims for negligence, IIED and conspiracy are barred by the two-year statute of limitations contained in Tex.Civ.Prac. & Rem.Code § 16.003; (2) Plaintiff's claims for fraud and breach of fiduciary duty are barred by the four-year statute of limitations contained in Tex.Civ.Prac. & Rem.Code § 16.003; and (3) Plaintiff's personal injury claim and his associated vicarious liability claim are barred by the special five-year statute of limitations for sexual abuse claims found in Tex.Civ.Prac. & Rem.Code § 16.0045(a). The Court will address each of these contentions in turn.

■ In Texas, a plaintiff's cause of action accrues and the applicable limitations period starts to run "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V. v. R.V.,* 933 S.W.2d 1, 3 (Tex.1996). This is true even in sexual abuse cases. *See id.* at 22. However, when a plaintiff is under eighteen years of age at the time an injury occurs, he is under a legal disability for limitations purposes. *See* Tex.Civ.Prac. & Rem.Code § 16.001(a). In such cases, claims for injuries suffered during childhood are deemed to accrue on the plaintiff's eighteenth birthday. *See id.* at § 16.001(b).

In this case, Plaintiff was a minor at the time that the acts causing his injuries occurred. Thus, the two-year limitations period for Plaintiff's negligence, IIED and conspiracy claims did not expire until his twentieth birthday, the four-year limitations period for his fraud and breach of fiduciary duty claims expired on his twenty-second birthday and the five-year limitations period for his sexual abuse and vicarious liability claims expired when he turned twenty-three. Because Plaintiff's Complaint indicates that he is at least twenty-eight years old,[1] and because Plaintiff failed to file his claims until now, his claims are time-barred—unless an exception exists to delay the commencement of the applicable statutes of limitations or to toll the running of the limitations periods on his claims.

## III.

In an attempt to overcome Defendants' limitations defense, Plaintiff contends that (1) under the discovery rule, accrual of his cause of action should have been deferred until he recently discovered the wrongful act and the resulting injury; (2) Defendants' fraudulent concealment of Linman's

---

1. The Court concludes that Plaintiff is at least twenty-eight because the alleged abuse oc- curred twenty-eight years ago.

sexual propensities tolled the statutes of limitations; and (3) Defendants are equitably estopped from asserting a limitations defense. The Court will address each of these theories in turn.

*The Discovery Rule*

■ The discovery rule is a limited exception to the statute of limitations. *See Computer Assocs. Int'l, Inc. v. Altai,* 918 S.W.2d 453, 455 (Tex.1996). Texas courts apply the discovery-rule exception to defer the accrual of a cause of action until the plaintiff knew or, by exercising reasonable diligence, should have known of the facts giving rise to the cause of action. *See id.; KPMG Peat Marwick v. Harrison County Housing Finance Corp.,* 988 S.W.2d 746, 749 (Tex.1999). The burden rests upon the defendant not only to plead limitations but also to negate the discovery rule. *See Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 518 n. 2, (Tex.1988). Moreover, the discovery rule applies only in cases that satisfy the "unifying principle," meaning that the injury must be inherently undiscoverable and the evidence of the injury must be objectively verifiable. *See Altai,* 918 S.W.2d at 456.

■ The inherently undiscoverable prong of the discovery rule requires the Court to determine whether the alleged wrongful act and resulting injury were inherently unknowable at the time they occurred. *See Computer Assocs.,* 918 S.W.2d at 456. An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence. *See id.* In another sexual abuse case, *S.V. v. R.V.,* the Texas Supreme Court was faced with a sexual assault the victim of which had repressed her memory of the wrongful act. There, the court assumed without deciding that because some traumas are by nature impossible to recall for a time, the plaintiff had satisfied the inherently undiscoverable element of the discovery rule. *See S.V.,*

933 S.W.2d at 7. This case differs from *S.V.,* however, because Plaintiff does not allege that he repressed all memory of the abuse. Rather, he alleges that his "chronic psychological condition ... prevented him from understanding and appreciating that the serious emotional, physical and sexual difficulties he suffers from were the direct result of the sexual abuse and other actions [of Defendants] until after January of 2002." Thus, Plaintiff candidly admits that he was aware of the alleged sexual abuse incident involving Linam and his related injuries prior to the expiration of the limitations period. Moreover, Plaintiff was aware of the Defendants' inaction after his alleged abuse.

Nevertheless, Plaintiff suggests that the inherently undiscoverable element requires that he not only know that the alleged abuse occurred, but also that his injuries—his psychological and emotional problems—were linked to Defendants' conduct. Essentially, he contends that because the information that his problems were related to the alleged acts of the Defendants (both the abuse and the cover-up) was "inherently undiscoverable" until only recently, the discovery rule applies. In making this argument, however, Plaintiff altogether misconstrues the meaning of the inherently undiscoverable requirement. Whether or not Plaintiff understood and appreciated that his troubles were linked to the alleged conduct of Defendants is of no consequence here, because neither the underlying wrongful acts nor the injuries alleged in this case were inherently undiscoverable. In fact, both had rather obvious manifestations before the limitations period expired. Plaintiff admittedly knew that he had been abused; and he knew that he was having emotional and psychological problems. Furthermore, Plaintiff knew (or could have easily discovered) that Defendants had concealed and/or failed to report Linam's sexual propensities. As

such, the Court finds that the alleged wrongful acts and injuries alleged by Plaintiff were not "inherently undiscoverable," as a matter of Texas law. Accordingly, the discovery rule does not toll the limitations period on any of Plaintiff's tort claims against Defendants.

*Fraudulent Concealment*

 Like the discovery rule, proof of fraudulent concealment also tolls accrual of limitations. As explained by the Texas Supreme Court:

> Fraudulent concealment is based upon the doctrine of equitable estoppel. In the proper case, invocation of fraudulent concealment estops a defendant from relying on the statute of limitations as an affirmative defense to plaintiff's claim. Where a defendant is under a duty to make disclosure but fraudulently conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should have learned thereof through the exercise of reasonable diligence.

*Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex.1983). Significantly, the estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action. *Id.* at 909. Knowledge of such facts is in law equivalent to knowledge of the cause of action. *Id.; Ruebeck v. Hunt*, 142 Tex. 167, 176 S.W.2d 738, 739 (1944).

In this case, the fraudulent concealment doctrine cannot operate to toll the limitations period because Plaintiff's Complaint affirmatively discloses that he was aware of the alleged abuse prior to the time that the applicable statutes of limitations began running. The Texas Supreme Court addressed this very issue in *S.V.*, stating:

"[the abuse victim] does not allege fraud or fraudulent concealment, nor could she. [The victim] was not deceived into thinking she was not abused when she was." *S.V.*, 933 S.W.2d at 8; *see also Marshall v. First Baptist Church of Houston*, 949 S.W.2d 504, 508 (Tex.App.—Houston [14th Dist.] 1997, no writ) (refusing to apply the fraudulent concealment doctrine in a case where the plaintiff, who was abused by a church music director, claimed that he remained unaware that his problems were related to the actions of the church until after the expiration of the applicable limitations period because the church had fraudulently concealed its knowledge of the crime). Plaintiff was clearly aware he had been abused and that he was having psychological problems at the time before the statutes of limitations began to run on his various causes of action. His knowledge of these facts and circumstances could have reasonably led him to discover his allegedly concealed causes of action, if he had only made a simple inquiry into his rights. And as stated above, knowledge of such facts is equivalent to knowledge of the corresponding causes of action. Thus, Plaintiff's fraudulent concealment theory fails to prevent dismissal of his claims as time-barred.

*Equitable Estoppel*

 Plaintiff also asserts that equitable estoppel prevents dismissal of his claims on limitations grounds. In response, Defendants argue that if Plaintiff cannot assert fraudulent concealment, he automatically cannot assert equitable estoppel. The Court disagrees. Equitable estoppel and fraudulent concealment "represent distinct (although kindred) defenses to limitations claims." *Neeley v. Bankers Trust Co. of Texas*, 757 F.2d 621, 632 (5th Cir. 1985). Equitable estoppel "subsumes fraudulent concealment, which thus constitutes but one species of the broader estop-

pel doctrine." *Id.* Therefore, a party's failure to make out the narrower defense of fraudulent concealment, does not necessarily prevent him from prevailing on the more general defense of equitable estoppel. *See id.*

Nevertheless, Plaintiff's equitable estoppel argument is without merit. In Texas, "in order to constitute equitable estoppel ... there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom the statement was made must have been *without knowledge or means of knowledge of the real facts;* it must have been made with the intention that it should be acted on; and that the party to whom it was made must have relied on or acted on it to his prejudice." *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 931 (1952) (emphasis added). In this case, Plaintiff admittedly had knowledge of the facts giving rise to his claims—the fact that he had been abused and the fact that he was suffering from psychological problems. Consequently, equitable estoppel does not apply.

In sum, neither the discovery rule, the fraudulent concealment doctrine or equitable estoppel operate to defer the accrual of Plaintiff's causes of action or to toll the applicable statutes of limitations. Accordingly, all of Plaintiff's claims against Defendants are time-barred, as a matter of law; and consequently, such claims are hereby **DISMISSED WITH PREJUDICE**. A final judgment reflecting this dismissal will be issued concurrently with this Order.

**IT IS SO ORDERED**

### *FINAL JUDGMENT*

Pursuant to the Court's Order Granting Defendants' Motions to Dismiss, all claims brought by Plaintiff against Defendants are hereby **DISMISSED WITH PREJU-** **DICE**. All Parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date; and all relief not herein provided is expressly denied. **THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**